UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROWAN FOWLER; ALLISTER HALL; and C.R., <br><br> *Plaintiffs*, <br><br> v. <br><br> KEVIN STITT, in his official capacity as Governor of the State of Oklahoma; KEITH REED, in his official capacity as Interim Commissioner of Health for the Oklahoma State Department of Health; and KELLY BAKER, in her official capacity as State Registrar of Vital Records, <br><br> *Defendants*. | Case No.: 22-CV-00115-GKF-SH |

## PLAINTIFF C.R.'S MOTION TO PROCEED PSEUDONYMOUSLY AND BRIEF IN SUPPORT

NOW COMES Plaintiff C.R., by and through his undersigned counsel, who hereby respectfully moves this Court for an order permitting this action using his initials in order to protect his identity from public disclosure, and respectfully submits this memorandum of law in support of his motion to proceed pseudonymously. C.R. makes this request because this case involves highly personal and sensitive information, the disclosure of which exposes C.R. to a risk of discrimination, harassment, and physical harm, and preventing the needless disclosure of that information is a core purpose of the litigation itself. There is no prejudice to Defendants from allowing C.R. to proceed pseudonymously, and ensuring the adjudication of C.R.'s underlying constitutional claims, including his right to privacy, serves the public interest.

## INTRODUCTION

Plaintiff C.R., a transgender man born and living in Oklahoma, has brought this action

along with others to challenge the constitutionality of the State of Oklahoma's policy and practice of categorically barring transgender persons from correcting the gender marker on their birth certificates to match their gender identity (hereinafter, the "Birth Certificate Policy"). C.R. seeks leave to proceed anonymously in this action in order to protect his privacy and safety and to avoid exposure to discrimination. Transgender persons have long been subject to discrimination, harassment, and even violence on account of their transgender status. Moreover, a person's transgender status and medical condition are sensitive and highly personal information, the forcible disclosure of which, as C.R. alleges in this action, violates his constitutional right to privacy. Forcing transgender people, such as C.R., to disclose their identities in public court records in order to vindicate their constitutional rights, including their right to privacy, exposes them to the very harms they seek to remedy and prevent: stigmatization, discrimination, harassment, and even violence.

Accordingly, C.R. respectfully asks this Court for permission to bring this action using an assumed name, under his initials, for the purpose of protecting his identity from public disclosure. C.R. also has no objection to providing his actual name to Defendants and the Court. Finally, in moving to proceed under a pseudonym, C.R. does not intend to prevent the public from observing the proceedings or rulings of this court, but only to prevent disclosure of his identity.

## ARGUMENT

Although, as a general matter, a complaint must state the names of all parties, Fed. R. Civ. P. 10(a), "there may be exceptional circumstances warranting some form of anonymity in judicial proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). "The rule . . . is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). While "identifying a plaintiff only by a pseudonym

is an unusual procedure," it is appropriate "where there is an important privacy interest to be recognized," and is "subject to a decision by the judge as to the need for the cloak of anonymity." *Doe v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1288 (D. Kan. 2017) (citing *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979)). The Tenth Circuit has recognized that plaintiffs should be allowed to proceed anonymously "where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name." *M.M. v. Zavaras*, 139 F.3d 798, 801 (10th Cir. 1998).[1]

The court may use informed discretion to weigh a plaintiff's "right to privacy against the countervailing public interest in determining that the motion to proceed under a fictitious name should be denied." *M.M.*, 139 F.3d at 803; *see also James*, 6 F.3d at 242. In evaluating a request for anonymity, "the court should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Pl. B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) (citation and quotation omitted); *see also Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *James*, 6 F.3d at 238; *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). *Cf. Femedeer*, 227 F.3d at 1246 (noting that "it is proper to weigh the public interest in determining whether some form of anonymity is warranted"). Among the questions courts ask when analyzing a request to proceed pseudonymously are: (1) whether the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *M.M.*, 139 F.3d at 803 (citing *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992)); (2) whether

---

[1] The Supreme Court has implicitly endorsed the use of pseudonyms to protect plaintiffs' privacy. *See Roe v. Wade,* 410 U.S. 113 (1973) (abortion); *Doe v. Bolton,* 410 U.S. 179 (1973) (abortion); *Poe v. Ullman,* 367 U.S. 497 (1961) (birth control).

3

the plaintiffs seeking anonymity "[are] challenging the constitutional, statutory, or regulatory validity of government activity," *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 416 (10th Cir. 1982); (3) whether they "involv[e] matters of a highly sensitive and personal nature," *Femedeer*, 227 F.3d at 1246; *M.M.*, 139 F.3d at 803; or (4) whether identification creates a risk of "real danger of physical harm," *id.*

**A.     Denial of the Motion to Proceed Pseudonymously Would Cause the Injury This Litigation Challenging a Governmental Policy Seeks to Avoid.**

C.R. is challenging the validity of government action.  Specifically, Plaintiffs are challenging the constitutionality of Oklahoma's Birth Certificate Policy and its enforcement by Defendants, including the burdens it places on the rights of transgender people.  Moreover, one of C.R.'s claims is that Oklahoma's Birth Certificate Policy impermissibly violates his right to privacy by forcing the disclosure of his identity and transgender status.  It would be paradoxical and unjust to require a plaintiff to disclose in public the very information he seeks to prevent from disclosure through litigation.  *See Lindsey*, 592 F.2d at 1125 (explaining "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid" (citation omitted)); *see also M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710-JAR-EB, 2018 WL 806210, at *3 (D. Kan. Feb. 9, 2018) (finding that the "real potential of additional psychological harm—one of the very injuries litigated against—is enough to outweigh the public interest in disclosure" of the plaintiff's identity).  "Justice should not carry such a high price." *Francis*, 631 F.3d at 1319.  The Court should give due consideration to C.R.'s concerns about being forced to maintain the suit in his own name.  *Id*.

## B. Denial of the Motion to Proceed Pseudonymously Would Necessarily Require the Disclosure of Highly Sensitive and Personal Information.

C.R.'s challenge to Oklahoma's Birth Certificate Policy is based on the need to protect him from the disclosure of highly personal and sensitive information, namely, C.R.'s transgender status and medical condition. Specifically, the disclosure of C.R.'s identity would mean the disclosure of his transgender status and diagnosis of gender dysphoria. However, courts have recognized that a person's transgender status is of an "excruciatingly private and intimate nature" that "is really beyond debate" "for persons who wish to preserve privacy in the matter." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see also Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 2018 WL 1896341, at *6 (D.P.R. Apr. 20, 2018) (holding that "forced disclosure of a transgender person's most private information," that being "their transgender status," violates "their constitutional right to informational privacy"); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that "requiring Plaintiffs to disclose their transgender status . . . directly implicates their fundamental right of privacy."), *reconsideration denied*, No. 15-11834, 2016 WL 106612 (E.D. Mich. Jan. 10, 2016); *K.L. v. State*, No. 3AN-11-05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is entitled to protection."). Simply put, one's gender identity is "among the most intimate parts of one's life." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. July 6, 1992). "Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest." *Arroyo Gonzalez*, 2018 WL 1896341, at *5.

Recognizing the highly personal and sensitive nature of a person's transgender status, courts have routinely allowed transgender litigants to proceed under pseudonym. *See*, *e.g.*, *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019); *Arroyo*

*Gonzalez*, 305 F. Supp. 3d 327; *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Doe v. D.C.*, No. CV 13-878 (RDM), 2016 WL 6088262 (D.D.C. Oct. 18, 2016); *Love*, 146 F. Supp. 3d 848; *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174 (N.D. Ohio Nov. 9, 2001); *Blue Cross*, 794 F. Supp. at 74 (allowing transgender plaintiff to proceed pseudonymously because "[a]s a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion."); *McClure v. Harris*, 503 F. Supp. 409 (N.D. Cal. 1980), *rev'd on other grounds, sub nom. Schweiker v. McClure*, 456 U.S. 188 (1982); *Doe v. McConn*, 489 F. Supp. 76, 77 (S.D. Tex. 1980); *Doe v. Alexander*, 510 F. Supp. 900 (D. Minn. 1981).

Furthermore, C.R.'s medical condition, gender dysphoria, would be released to the public if this motion is not granted. "There is no dispute that confidential medical information is entitled to constitutional privacy protection." *A.L.A. v. W. Valley City*, 26 F.3d 989, 990 (10th Cir. 1994). Indeed, "[t]he Tenth Circuit Court of Appeals 'has repeatedly interpreted the Supreme Court's decision in *Whalen* as creating a right to privacy in the non-disclosure of personal information,' including confidential medical information." *Royce v. Veteran Affairs Reg'l Office*, No. 08-cv-01993-KMT-KLM, 2009 WL 1904332, at *7 (D. Colo. July 1, 2009) (quoting *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000)); *see also Herring*, 218 F.3d at 1175 (concluding plaintiff "alleged a violation of a constitutional right to privacy in the non-disclosure of information regarding one's HIV status by a government official"); *cf. Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (noting that "many courts have recognized pseudonym use" in cases involving mental health). Accordingly, a medical condition such as gender dysphoria, which is highly private information, warrants protection from disclosure. *See Powell*, 175 F.3d at 112 ("transsexuals are among those who possess a constitutional right to maintain medical confidentiality").

Based on the above, the Court should find C.R.'s privacy interest sufficient to proceed anonymously.

**C.	Disclosure of C.R.'s Identity Would Expose Him to the Risk of Stigmatization, Discrimination, Harassment, and Violence.**

In addition, courts have recognized that real danger of physical harm is an "exceptional circumstance[] warranting some form of anonymity in judicial proceedings." *Femedeer*, 227 F.3d at 1246; *see M.M.*, 139 F.3d at 803; *see also Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, No. 16-CV-2801-JWL-TJJ, 2017 WL 3839416, at *11 (D. Kan. Sept. 1, 2017). Whereas the risk to one's personal or professional reputation may not constitute sufficient damage to permit a plaintiff to proceed pseudonymously, *see Lindsey*, 592 F.2d at 1125, forced disclosure of a person's transgender status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez*, 2018 WL 1896341, at *6; *see also F.V.*, 286 F. Supp.3d at 1137 ("Transgender people who present mismatched identification are verbally harassed, physically assaulted, denied service or benefits, or asked to leave the premises."). "The hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n. 8 (D.C. 2014); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."); *Karnoski v. Trump*, No. 17-Civ-1297, 2018 WL 1784464, at *10 (W.D. Wash. Apr. 13, 2018) ("The history of discrimination and systemic oppression of transgender people in this country is long and well-recognized."); *Love*, 146 F. Supp. 3d at 856 (noting "there is a great deal of animosity towards the transgender community"); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) ("Transgender people have suffered a history of persecution and discrimination . . . this is not much in debate." (citation omitted)).

7

"Moreover, this history of persecution and discrimination is not yet history." *Adkins*, 143 F. Supp. 3d at 139. A recent study revealed that nearly half (48%) of transgender people have been denied equal treatment, verbally harassed, and/or physically attacked because of being transgender. *See* James, S. E., et al., Nat'l Ctr. for Transgender Equality, *The Report of the 2015 U.S. Transgender Survey* (2016), at 198, *available at* https://goo.gl/jBze6c. Specifically, nearly half (46%) of transgender people have been verbally harassed and almost one in ten (9%) have been physically attacked because of being transgender. *Id.*

These considerations are also acute for transgender people in Oklahoma like C.R.. There is no question that transgender individuals in Oklahoma face high levels of discrimination, harassment, and violence. For example, 36% of Oklahoman transgender people who have shown an identity document with a name or gender that did not match their gender presentation report having been verbally harassed, denied benefits or service, asked to leave, or assaulted. *See* Nat'l Ctr. for Transgender Equality, *2015 U.S. Transgender Survey: Oklahoma State Report* (2017), at 3, *available at* https://goo.gl/zTXGrC. Moreover, as detailed in the complaint, C.R. has been subject to discrimination and harassment because he is transgender. *See, e.g.*, Compl. ¶¶ 113-19. He is also not generally open about the fact that he is transgender in his current primary place of employment, because he is concerned about being subjected to discrimination as a result. *Id.* ¶ 119.

Thus, because of the stigma placed upon transgender individuals and the real risks of discrimination, harassment, and violence transgender people face on account of their transgender status, courts have allowed transgender plaintiffs to proceed under pseudonyms. *See*, *e.g.*, *Blue Cross*, 794 F. Supp. at 73 (noting that "in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he

might otherwise endure"); *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009) (shielding the publication of a transgender individual's name in seeking a court order regarding a name change based upon his "right to feel threatened for his personal safety in the event his transgender status is made public"). Indeed, the "most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Blue Cross*, 794 F. Supp. at 74. In this case, C.R. has alleged that he fears he will be exposed to a risk of discrimination should his transgender status become publicly known. Based on the above, C.R.'s fears are reasonable and the harm threatened is severe.

C.R.'s fears are based on the widespread misunderstanding of, and hostility towards, transgender persons, which has resulted in discrimination and harassment, as well as the prevalence of violence against transgender individuals. The threat of physical harm to transgender individuals due to the disclosure of their transgender status is real. As one court recognized, "there exist numerous documented instances of those targeted for violence based on their . . . gender identity." *In re E.P.L.*, 891 N.Y.S.2d at 621.

**D.     The Public Interest Counsels in Favor of Granting C.R.'s Request to Proceed Pseudonymously.**

The protection of constitutional rights is of the utmost public interest, and lawsuits seeking to vindicate and protect those rights serve the public. The "ultimate test" to determine whether a plaintiff may proceed anonymously is "whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Roe v. Catholic Health Initiatives Colorado*, No. 11-CV-02179-WYD-KMT, 2012 WL 12840, at *5 (D. Colo. Jan. 4, 2012). C.R. simply seeks to vindicate and protect his constitutional rights, which apply to all persons in Oklahoma. Forcing an individual to disclose

9

the very information that he argues would violate his constitutional right to privacy would dissuade other similarly situated individuals from bringing forth such claims and encourage the violation of the fundamental right to privacy. *Cf. Doe v. Stand. Ins. Co.*, No. 1:15-CV-00105-GZS, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015) ("To deny Plaintiff's request under the circumstances of this case might not only prevent Plaintiff from proceeding on her claim, but might also discourage others . . . from asserting their claims.").

C.R. does not seek to restrict the public's general right to access the materials, proceedings, and court rulings in this case. C.R.'s request is narrowly tailored to prevent the disclosure of his identity. "Particularly when the public will have access to the facts relevant to the parties' arguments and the Court's ultimate decision in the case, an order permitting Plaintiff to proceed under a pseudonym will not unreasonably interfere with the public's interest in access to judicial records and will promote the public's interest" by protecting everyone's constitutional rights. *Stand. Ins. Co.*, 2015 WL 5778566, at *3.

Thus, "[t]he public also has an interest in seeing this case decided on the merits" and permitting C.R. to proceed pseudonymously "will serve the public's interest in this lawsuit by enabling [the claims he presents] to go forward." *Adv. Textile Corp.*, 214 F.3d at 1073.

**E.  Granting C.R.'s Request Would Cause No Prejudice to Defendants.**

C.R. does not seek to withhold his identity from Defendants or the Court, but only to proceed pseudonymously, under his initials, and to prevent disclosure of his identity in public documents. Allowing C.R. to proceed under a pseudonym under the aforementioned conditions will not prejudice Defendants; Defendants will know C.R.'s true identity, and any appropriate privacy protections can be determined through a subsequent motion for a protective order. *See Doe v. Porter*, 370 F.3d 558, 560-61 (6th Cir. 2004); *Doe v. United Services Life Ins. Co.*, 123

F.R.D. 437, 439 (S.D.N.Y. 1988); *see also USD No. 237 Smith Ctr. Sch. Dist.*, 2017 WL 3839416, at *11. "[I]t is unclear how [the Court's grant of the requested relief] would . . . hinder[] [Defendants'] preparation" of the case, as Defendants here would still be able "to obtain all the information necessary to address" the issues in this case without public disclosure of C.R.'s name. *Porter*, 370 F.3d at 561.

## CONCLUSION

Because the risks associated with the disclosure of C.R.'s identity are real and substantial, and C.R. should not be required to risk exacerbating the very harms he is attempting to prevent in bringing this action, granting leave for C.R. to proceed pseudonymously is necessary to prevent C.R. from revealing sensitive personal and medical information, and exposing himself to the risk of harassment, discrimination, or even physical harm. Such an order would not compromise Defendants' ability to conduct their defense. For these and the foregoing reasons, C.R. respectfully requests the Court to grant this motion to proceed pseudonymously under his initials.

DATED: March 14, 2022

| | |
|---|---|
| Shelly L. Skeen* | Respectfully submitted, |
| Nicholas Guillory* | |
| LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. | /s/ Karen Keith Wilkins |
| 3500 Oak Lawn Ave, Unit 500 | Karen Keith Wilkins, OBA# 21005 |
| Dallas, TX 75219 | 1515 S. Denver Ave. |
| Telephone: (214) 219-8585 | Tulsa, OK 74119 |
| Fax: (214) 481-9140 | Telephone: (918) 599-8118 |
| sskeen@lambdalegal.org | Fax: (918) 599-8119 |
| nguillory@lambdalegal.org | karen@wilkinslawtulsa.com |

Peter C. Renn*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010

Telephone: (213) 382-7600
Fax: (213) 402-2537
prenn@lambdalegal.org

*Attorneys for Plaintiffs*

*Pending admission *pro hac vice*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 14th, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system. The following parties or counsel were served by electronic means, as reflected in the Notice of Electronic Filing:

Not Applicable (no defendant has yet appeared)

I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants via U.S. first class mail, postage prepaid addressed as follows:

Kevin Stitt
Office of Governor J. Kevin Stitt
2300 N. Lincoln Blvd., Suite 212
Oklahoma City, OK 73105

Keith Reed
Interim Commissioner of Health
Oklahoma State Department of Health
123 Robert S. Kerr Ave., Suite 1702
Oklahoma City, OK 73102-6406

Kelly Baker
State Registrar
Oklahoma State Department of Health
123 Robert S. Kerr Ave., Suite 1702
Oklahoma City, OK 73102-6406

State of Oklahoma
Oklahoma Attorney General's Office
Litigation Section
313 N.E. 21st Street
Oklahoma City, OK 73105-3498

/s/ Karen Keith Wilkins
Karen Keith Wilkins
Attorney for Plaintiffs