UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROWAN FOWLER, *et al.*,

      *Plaintiffs,*

 v.

KEVIN STITT, *et al.*

      *Defendants.*

No.  22-CV-00115-GKF-SH

## DEFENDANTS' RESPONSE AND OBJECTION TO
## PLAINTIFF C.R.'S MOTION TO PROCEED PSEUDONYMOUSLY

Submitted by:

ZACH WEST, OBA #30768
 *Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

BRYAN CLEVELAND, OBA #33860
 *Deputy Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Bryan.Cleveland@oag.ok.gov

AUDREY WEAVER, OBA #33258
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

**COUNSEL FOR DEFENDANTS**         **August 26, 2022**

**INTRODUCTION**

After proceeding in a related state court action without anonymity, Plaintiff C.R. (hereinafter "Plaintiff") now comes before this Court under the secrecy of pseudonym, asking this Court to indefinitely conceal Plaintiff's real name and identity from the public.  Plaintiff's request finds no support in the Federal Rules of Civil Procedure and contravenes the long-standing recognition of the public nature of judicial proceedings. Plaintiff suggests that this suit nonetheless presents the extraordinary circumstance where anonymity is justified because litigating this case under Plaintiff's real name would constitute a "forcible disclosure" of "sensitive and highly personal information" which "violates his constitutional right to privacy." Doc. 4 at p. 2. Yet, Plaintiff cannot establish that the inclusion of birth or biological sex on a birth certificate implicates, let alone violates, any important privacy interest. Moreover, Plaintiff has voluntarily and unnecessarily chosen to participate as one of three plaintiffs—two of whom have no problem proceeding under their real names—in a facial constitutional challenge generally asserting the interests of transgender individuals. Finally, Plaintiff's identity, real name, and personal information have been voluntarily disclosed either directly or indirectly through the Complaint, waiving any privacy interest that may otherwise exist.

Defendants respectfully request this Court deny Plaintiff's Motion to Proceed Pseudonymously, Doc. 4.

**BACKGROUND**

1.      On March 14, 2022, Plaintiff C.R., along with two other named Plaintiffs, filed and initiated the above-styled suit against Defendants. *See* Doc. 2.

2.      On that same day, Plaintiff filed a motion asking this Court to conceal and seal Plaintiff's legal name from the public docket while the lawsuit proceeds. Doc. 4.

3.      On July 29, 2022, the plaintiffs filed their First Amended Complaint. Doc. 21.

4.      According to the First Amended Complaint, Plaintiff "is a 23-year-old [transgender] man" living in Oklahoma. Doc. 21 at ¶¶ 104, 106. Plaintiff, who was "assigned the sex of female at birth," has been "liv[ing] openly as [a transgender] male" for approximately two years. *Id.* at ¶¶ 106-07.

5.      According to the First Amended Complaint, Plaintiff obtained an order granting a petition for change of name and gender marker on June 24, 2021, in Creek County District Court. *Id.* at ¶ 109.

6.      Under Oklahoma law not at issue in this suit, any individual may petition to change his or her name in a civil action in district court through a verified petition containing clear and concise statements of the reasons for the desired change. 12 O.S. §§ 1631-1632.

7.      The petitioner must give notice of the filing and hearing by publishing the same at least once in some newspaper authorized by law to publish legal notices in the county where the petition was filed. 12 O.S. § 1633.

8.      In order to obtain the order granting Plaintiff's petition for a name change, Plaintiff complied with the statutory requirements, including by filing suit in Plaintiff's former name, publicly disclosing a medical transition to a gender identity of male, publicly disclosing a name change, and publishing notice of the name change, including Plaintiff's former and current legal name, in a newspaper for Creek County, Oklahoma.[1]

### ARGUMENT AND AUTHORITIES

Legal proceedings are inherently public events to which members of the public have a right and interest in accessing. *See M.M. v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998) ("Even a superficial

---

[1] A quick search of the Oklahoma State Courts Network for June 24, 2021 orders of the Creek County District Court, Doc. 21 at ¶ 109, reveals that Plaintiff C.R. voluntarily and publicly disclosed both the prior feminine and current masculine names in court and in publication to a local newspaper. Defendants request this Court take judicial notice of the referenced case and pleadings and reserve the right to supplement the record, or provide the evidence *in camera*, in the event the Court requests the same or a factual dispute arises.

recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society."). The public's significant interest in judicial proceedings includes knowing the identities of the parties involved. "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). That public interest in access to legal proceedings is likely at its highest in those lawsuits attacking the constitutionality of duly enacted legislation and the actions of elected officials, as the challenger seeks not to merely vindicate the rights of private parties but the public at-large. *Cf. M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (observing that the "prejudice to the public interest is clear" when anonymity was sought in a case involving "the use of public funds").

The public nature of legal proceedings promotes fairness and accountability. *See Doe v. Vill. of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016) ("[A]nonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes."). Defendants have the right to know who their accusers are, for example, and fundamental unfairness can result if they do not. Otherwise, "anonymity provides a shield behind which defamatory charges may be launched without shame or liability." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). Knowing the identity of litigants:

> tends to sharpen public scrutiny of the judicial process, to increase confidence in the administration of the law, to enhance the therapeutic value of judicial proceedings, and to serve the structural function of the First Amendment by enabling informed discussion of judicial operations.

71 A.L.R.7th Art. 4 (Originally published in 2022).

Plaintiff cannot overcome this typical presumption. Proceeding pseudonymously is highly unusual and rarely granted. Plaintiff fails to assert any cognizable privacy interest that would support that unusual procedure here, has already waived any privacy interest through prior disclosures in state court and elsewhere, and has failed to establish any concrete reason for the motion.

## I.    There is no right to proceed pseudonymously.

Statutes, including the Federal Rules of Civil Procedure, enumerate the narrow circumstances where protection of privacy overrides the public's right to access details of court records and proceedings. The private information protected from public disclosure consists of social security numbers, taxpayer-identification numbers, birth dates, the names of minors, and financial-account numbers. Fed. R. Civ. P. 5.2(a). But even these exceptions are not absolute and can be waived by the person's own disclosure. Fed. R. Civ. P. 5.2(b), (h). Only by otherwise complying with strict procedures can individuals remove, protect, or seal information from the public record. *See, e.g.,* Fed. R. Civ. P. 5.2(d), (e).

No statute or rule supports a general right to the "unusual procedure" of proceeding in litigation anonymously, pseudonymously, or under a fictitious name. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000); *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 (10th Cir. 2017). Nor does Plaintiff even attempt to identify any statute that would support the request to proceed pseudonymously. In contrast, the Federal Rules require that "[t]he title of the complaint must name all the parties[]" and "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 10(a), 17(a); *see also M.M. v. Zavaras*, 139 F.3d 798 (10th Cir. 1998).

Not only does the practice of proceeding in litigation anonymously run contrary to federal rules, as well as the public interest, but it also creates practical difficulties and unnecessary burdens and inconvenience to the litigation process. For example, shielding litigant names complicates the courts' ability to apply legal principles including res judicata and collateral estoppel. *See Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) ("Such use obviously may cause problems to defendants engaging in discovery and establishing their defenses, and in fixing res judicata effects of judgments."). It also disadvantages the opposing party's ability to inquire into and present claims

or defenses to initial pleadings and filings.[2] Before filing any document of record, the parties will have to comply with additional procedural requirements, which will burden the ability to efficiently establish claims and defenses at every stage in the litigation. It will complicate the discovery process and may lead to an additional layer of potential disagreements between the parties surrounding the scope of the protection against disclosure. Discovering and presenting relevant evidence may indirectly reveal the litigant's identity anyway, making it unlikely anonymity can be maintained throughout the suit without serious prejudice to the opposing party. For these reasons alone, this Court should, in its discretion, deny Plaintiff's Motion.

## II.     Plaintiff fails to show any exceptional circumstance here that would support proceeding under a pseudonym.

In the absence of any precise authority for, or guidance on, the practice of proceeding anonymously or pseudonymously, courts have nonetheless acknowledged the same because of the Supreme Court's tacit approval of the same in precedent like *Roe v. Wade*, 410 U.S. 113 (1973), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). *See, e.g., Lindsey*, 592 F.2d at 1125. The Tenth Circuit has pronounced that a plaintiff may "proceed anonymously **only in those exceptional cases** involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer*, 227 F.3d at 1246 (emphasis added) (citing *Doe v. Frank*, 951 F.3d 320, 324 (11th Cir. 1992)); *see also Lindsey*, 592 F.2d at 1125 (describing the practice of proceeding pseudonymously is "allowed only where there is an important privacy interest to be recognized.").

---

[2] Although Defendants were able to readily identify Plaintiff through information provided in the Complaint, the unwarranted secrecy has already unnecessarily burdened Defendants in the discovery and presentation to the court of relevant evidence, such as statements to third parties made by Plaintiff that are relevant to Defendants' waiver argument.

The Tenth Circuit's narrow treatment of requests to proceed anonymously differs to some extent from other circuit court tests. *Compare Zavaras*, 139 F.3d at 803 (endorsing an "informed discretion" analysis weighing the plaintiff's claimed right to privacy against countervailing public interests) *with Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (requiring a "careful review of all the circumstances"); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (adopting a "matrix of considerations"); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008) (endorsing ten, non-exhaustive factors); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (endorsing balancing of a non-exhaustive list of factors).[3] In any event, all circuit courts more or less agree that "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 951 F.2d at 323; *see also Stegall*, 653 F.2d at 185; *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010); *Megless*, 654 F.3d at 408.

In the Tenth Circuit, based on Defendants' research, it appears that virtually every request to proceed anonymously has been denied. *See, e.g., Lindsey*, 592 F.2d at 1125 (affirming district court's refusal to allow plaintiff to proceed under pseudonym in case involving malicious prosecution by an inmate); *Coe v. U.S. Dist. Court for Dist. Of Colorado*, 676 F.2d 411, 418 (10th Cir. 1982) (affirming district court's denial of anonymity in case involving sexual or immoral improprieties of a doctor); *Femedeer*, 227 F.3d at 1246 (denying anonymity in case involving sex-offender status); *Zavaras*, 139 F.3d at 804 (affirming dismissal of complaint by an anonymous plaintiff in case involving an indigent female inmate seeking abortion services); *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (unpublished) (affirming district court's denial of plaintiff's motion to proceed under pseudonym in case involving civil rights litigation); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1250 (10th Cir. 2017) (affirming dismissal of complaint when plaintiffs failed to

---

[3] The Ninth Circuit endorses a less exhaustive, five-factor balancing test. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010).

seek permission to appear anonymously in case involving fear of employer retaliation); *Goico v. Kansas*, 773 F. App'x 1038, 1040 (10th Cir. 2019) (unpublished) (affirming district court's denial of plaintiff's request for anonymity in case involving a challenge to the state's attempts to legalize marijuana). Because Plaintiff cannot overcome the heavy burden imposed by binding precedent, this Court should deny the Motion, Doc. 4.

A.   *No important privacy interest is implicated by the State's inclusion of (and refusal to amend) birth sex in a birth certificate, nor in Plaintiff's challenge to the same.*

There is no important privacy interest in birth, *i.e.* biological, sex, including when revealing the same may indirectly reveal transgender status. The sex reported on a state-issued birth certificate is a certifiable fact, determined by objective biology at the time of birth. *See* Doc. 24 at pp. 2-5, 23-25. As such, sex, like any number of individual identifiers, is not the type of highly personal information implicated by any individual right to privacy. *See id.* at pp. 7-8, 14-19, 21-22, 26-8.

A reasonable expectation of privacy arises when there is an actual, subjective expectation of privacy and, importantly, when society is prepared to recognize that expectation as reasonable. *See, e.g., United States v. Maestas*, 639 F.3d 1032, 1035 (10th Cir. 2011). Birth or biological sex is not the type of private, personal information that an individual has a reasonable expectation of privacy in. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 599–600 & n. 26 (1977); *see also* Doc. 24 at pp. 7-8. By extension, neither is the fact someone presents themselves as a different gender identity from their birth sex.

Although sex may feel inherently personal to the individual, so could a person's name, birth date, address, height, weight, eye-color, and other like information routinely disclosed to the government or contained on government-issued records. Yet, the government has a well-established and compelling interest in recording such identifying information, including sex. *Cf.* Doc. 24 at pp. 2-5, 15-17; *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *United States v. Virginia*, 518 U.S. 515, 545 (1996); *Caskey Baking Co. v. Virginia*, 313 U.S. 117, 121 (1941).

Importantly, many courts have declined to find a fundamental right to privacy in the collection or disclosure of the routine personal information collected on driver's licenses and motor vehicle records. *See, e.g., Condon v. Reno*, 155 F.3d 453, 464 (4th Cir. 1998) *rev'd on other grounds by Reno v. Condon*, 528 U.S. 141 (2000) ("Of particular importance here, neither the Supreme Court nor this Court has ever found a constitutional right to privacy with respect to the type of information found in motor vehicle records."); *Meadows v. Lake Travis Indep. Sch. Dist.*, 397 F. App'x 1, 4 (5th Cir. 2010) ("[T]he [plaintiffs'] claims of the violation of their right to privacy fail because they have not shown that they have a right to privacy in their driver's licenses, nor can they."); *Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999) *rev'd on other grounds by Reno v. Pryor*, 528 U.S. 1111 (2000) (describing that because motor vehicle records information is not "intimate personal information given to a state official in confidence[,]" "an individual does not have a reasonable expectation that the information is confidential."); *see also Rasmusson v. Chisago County*, 991 F.Supp.2d 1065, 1075-1077 (D. Minn. 2014).

Even if there could be some privacy interest in "transgender status" more generally, such an interest is not implicated in this suit. A birth certificate simply discloses birth, *i.e.* biological, sex. The inclusion of birth sex on the birth certificate does not by itself disclose whether the individual is transgender, whether their gender identity algins with their birth certificate, whether they have a medical condition, or whether their appearance does not match their birth sex. To the extent State's inclusion of birth sex on a birth certificate *indirectly* reveals that individual's transgender status to third parties, it is through a chain of intervening factors far removed from any action of the State. *See* Doc. 24 at pp. 27-29.[4]

---

[4] In reality, under Plaintiff's legal theory here it would be impossible to find a privacy interest in "transgender status" separate and apart from biological or birth sex. As explained by the U.S. Supreme Court in *Bostock v. Clayton Co.*, 140 S. Ct. 1731 (2020), it is impossible to separate the two because transgender status requires a birth sex. A transgender individual openly discloses a subjective gender identity (and therefore doesn't claim nor expect privacy in gender identity) and is only transgender because that gender identity differs from biological or birth sex. *See* Doc. 24 at p. 11.

In sum, inclusion of (and refusal to amend) sex on a birth certificate does not constitute a compelled disclosure of transgender status by the State. The State's inclusion of (and refusal to amend) sex on a birth certificate does not implicate an important privacy interest that would justify allowing a plaintiff challenging the same to proceed under the cloak of anonymity.

B.    *Any privacy interest otherwise existing in Plaintiff's name and identity has been waived.*

Even if Plaintiff could establish the State's inclusion of (and refusal to amend) biological sex on birth certificates involved an important privacy interest, this Plaintiff has waived any interest through public disclosures. "In cases where the sensitive information has already been disclosed during a party's prior litigation under its real name, the social interest in allowing a party to proceed anonymously is limited." *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (unpublished); *see also Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." (citations omitted)).

i.    <u>Plaintiff has waived any privacy interest by publicly disclosing identity in prior litigation.</u>

Whatever interest Plaintiff may have had in preserving anonymity during these proceedings was waived when Plaintiff freely and intentionally disclosed identity in state court litigation leading up to this case. Specifically, in obtaining a name change in the District Court of Creek County, Plaintiff publicly disclosed transgender status. *See supra* p. 3; Doc. 21 at ¶ 109. By publicly disclosing identity in prior state court proceedings, and then referencing those proceedings with sufficient specificity in the present lawsuit to allow the rather simple determination of Plaintiff's identity, Plaintiff failed to preserve an interest in anonymity.

Moreover, here Plaintiff failed to plead or establish that birth sex, or for that matter transgender status, was private, confidential, secret, or not previously and regularly disclosed. In contrast, Plaintiff's transition as a transgender did not openly occur until the age of "21 years old."

Doc. 21 at ¶ 107. As a result, Plaintiff has been living as a transgender individual for a mere two years, while living consistent with birth sex for twenty-one years. Moreover, Plaintiff cites multiple instances of public disclosures of birth sex, completely unrelated to any disclosure of a birth certificate. For example, when Plaintiff's driver's license reflected birth sex, Plaintiff would "present it to others[,]" *id.* at ¶ 116, which would cause "repeated instances of having his identity interrogated, debated, and doubted by third parties[,]" *id.* at ¶ 119, or would require an explanation of transgender status, *id.* at ¶ 118. Additionally, third parties at Plaintiff's workplace already know Plaintiff's birth sex, because Plaintiff describes a coworker who "would not use male pronouns . . . ." *Id.* at ¶ 120.

To summarize, Plaintiff has repeatedly and publicly disclosed birth sex to third parties and Plaintiff's birth sex, as well as transgender status, is openly and publicly known—all for reasons having nothing to do with the State's refusal to amend sex on a birth certificate. Put simply, "[t]his is not a case where there seems a social interest in concealment of his identity." *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979).

  ii. <u>Plaintiff has waived any privacy interest by unnecessarily placing birth sex and transgender status at issue in this suit.</u>

Again, even if Plaintiff could establish the State's inclusion of (and refusal to amend) biological sex on birth certificates involved an important privacy interest and Plaintiff hadn't waived any such privacy interest through prior disclosures, Plaintiff has likewise waived any privacy interest by voluntarily and unnecessarily appearing as a plaintiff in this suit. Plaintiff and two other named plaintiffs filed their Complaint "challenging the constitutionality of Oklahoma's Birth Certificate Policy and its enforcement by Defendants, including the burdens it places on the rights of transgender people." Doc. 4 at p. 4; *see also* Doc. 21. This suit claims Oklahoma law is facially unconstitutional as it violates alleged rights of transgender people and seeks broad relief vindicating the interests of transgender people. *See* Doc. 4 at pp. 2-3 ("Plaintiff . . . brought this action along with others to challenge the constitutionality of the State of Oklahoma's policy and practice of categorically barring

transgender persons from correcting the gender marker on their birth certificates to match their gender identity . . . ."); Doc. 21 at pp. 32-33.

In the First Amended Complaint, Plaintiff voluntarily placed identity, biological sex, and transgender status at the crux of this litigation. Plaintiff volunteers a wealth of personal information, including that Plaintiff "is transgender[,]" "was assigned the sex of female at birth," has a "male gender identity," "received a diagnosis of gender dysphoria," and is "living openly as a male." Doc. 21 at ¶¶ 106, 108. This information was voluntarily disclosed by Plaintiff—not forcibly disclosed by the State. Such voluntary disclosures waive any privacy interest otherwise applicable.

But even assuming disclosure of some details of a plaintiff's transgender status is necessary or relevant to the adjudication of this facial challenge, Plaintiff here is not a necessary or indispensable party. The three plaintiffs named in this suit filed a combined complaint by the same counsel. *See generally* Doc. 21. The three plaintiffs assert the exact same claims, seek the exact same relief, and advance the exact same rights and interests as one another and transgender individuals more broadly. *See id.* at pp. 32-33. Even the factual averments specific to each plaintiff are strikingly similar, and none of Plaintiff's averments reveal some unique or peculiar injury distinct from other plaintiffs. *Compare id.* at pp. 24-28 *with* 16-24. The other two plaintiffs have revealed their identities and have not filed similar motions to proceed pseudonymously. *See id.* at p. 1. Because Plaintiff's involvement in this lawsuit is unnecessary in the first place, Plaintiff has waived any competing privacy interest by voluntarily submitting to the jurisdiction of this Court. To the extent Plaintiff seeks to protect anonymity *and* see alleged constitutional rights vindicated, Plaintiff could presumably drop out of the case because of the ongoing claims of the other two plaintiffs.

    C.    *Plaintiff has failed to establish any real danger of physical harm from being denied anonymity in this case.*

Again, anonymity is appropriate "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would

be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer*, 227 F.3d at 1246 (citation omitted); *see also Lindsey*, 592 F.2d at 1125 (describing the practice of proceeding pseudonymously as "allowed only where there is an important privacy interest to be recognized."). Some risk of embarrassment, or some speculative claim of harm or danger, is not enough warrant anonymity. *Id.*; *see also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("[T]he fact that Doe may suffer some personal embarrassment, standing alone, does not require the granting of his request to proceed under a pseudonym."). Nor has the Tenth Circuit endorsed weighing subjective and lesser threats of *psychological* harm. *Cf. Raiser v. Brigham Young University*, 127 F. Appx. 409, 411 (unpublished) (noting "embarrassment is insufficient to permit anonymity" and that the plaintiff failed to present "any particularized reasons why proceeding publicly would cause him real psychological or physical injury."); *M.T. v. Olathe Public Schools USD* 233, 2018 WL 806210 (D. Kan. 2018) (unpublished) (allowing a plaintiff to proceed by pseudonym in a case involving the sexual abuse of a minor).

Here, Plaintiff presents nothing but subjective speculation about danger or harm—all generalized. For example, Plaintiff claims "Transgender persons have long been subject to discrimination, harassment, and even violence" and that "[f]orcing transgender people, such as C.R., to disclose their identities in public court records . . . exposes them to the very harms they seek to remedy and prevent . . . ." Doc. 4 at p. 2. None of these general allegations, even if true, are sufficient to establish a concrete or real threat or danger to Plaintiff personally sufficient to overcome the strong countervailing interest in public proceedings. *See also* Doc. 21 at ¶¶ 45-48. In fact, the two other plaintiffs consented to proceed in their own names and identities, severely undermining the persuasiveness of Plaintiff's generic complaints. To accept Plaintiff's arguments here would be to exempt transgender individuals entirely from ever having to appear by name in court. This position is foreclosed by Tenth Circuit precedent requiring an exceptional (and presumably particularized) case in order for a plaintiff to proceed under the cloak of anonymity.

## **CONCLUSION**

For these reasons, Defendants respectfully request this Court deny Plaintiff C.R.'s Motion to Proceed Pseudonymously, Doc. 4, and enter an order commanding Plaintiff to immediately disclose Plaintiff's real name and identity in compliance with the Federal Rules of Civil Procedure, or in the alternative dismissing Plaintiff from the First Amended Complaint.

Respectfully submitted,

s/*Audrey A. Weaver*

ZACH WEST, OBA #30768
  *Solicitor General*
BRYAN CLEVELAND, OBA #33860
  *Deputy Solicitor General*
AUDREY A. WEAVER, OBA #33258
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Zach.west@oag.ok.gov
Bryan.cleveland@oag.ok.gov
Audrey.weaver@oag.ok.gov
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of August, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

s/*Audrey A. Weaver*
Audrey A. Weaver

15