UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROWAN FOWLER; ALLISTER HALL; and C.R.,<br><br>    *Plaintiffs*,<br><br> v.<br><br>KEVIN STITT, in his official capacity as Governor of the State of Oklahoma; KEITH REED, in his official capacity as Commissioner of Health for the Oklahoma State Department of Health; and KELLY BAKER, in her official capacity as State Registrar of Vital Records,<br><br>    *Defendants*. | Case No.:  22-CV-00115-GKF-SH |

## PLAINTIFF C.R.'S REPLY IN SUPPORT OF MOTION TO PROCEED PSEUDONYMOUSLY

Submitted by:

Shelly L. Skeen*
Nicholas Guillory*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3500 Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org
nguillory@lambdalegal.org

Peter C. Renn*
Christina S. Paek*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 Wilshire Boulevard, Ste. 280
Los Angeles, CA 90010
Telephone: (213) 382-7600
prenn@lambdalegal.org
cpaek@lambdalegal.org

Karen Keith Wilkins, OBA# 21005
1515 S. Denver Ave.
Tulsa, OK 74119
(918) 599-8118
karen@wilkinslawtulsa.com

*Admitted *pro hac vice*

September 30, 2022

*Attorneys for Plaintiffs*

1

Defendants cannot credibly argue that they or anyone else will be harmed whatsoever by the relief that Plaintiff C.R. has sought here—which court after court has routinely granted to transgender parties across scores of cases in light of the harms they would otherwise face.[1] Indeed, by their own admission, Defendants already have everything they need to litigate this matter zealously, including C.R.'s identity. Thus, the only real purpose served by Defendants' merciless tactics here—which include functionally "doxing" C.R. in public filings before this Court has even had a chance to rule on his motion and thus circumventing the judicial process—is to deter members of a vulnerable minority from seeking to vindicate their civil rights.

Despite well-founded fears for his safety and well-being, C.R. has made a brave but necessary decision to seek relief from this Court for Defendants' violation of his constitutional rights. He should not be penalized for doing so. This case presents a classic situation warranting anonymity in light of the privacy injury being litigated, the highly sensitive and personal nature of one's transgender status, and the danger of physical harm from the disclosure of that status.

## ARGUMENT

**I.   The Circumstances Presented by This Litigation Uniquely Justify Permitting Plaintiff C.R. to Proceed Pseudonymously.**

Defendants observe that there is no automatic right to proceed anonymously. That is

---

[1] Indeed, while courts regularly grant requests to proceed pseudonymously to transgender parties across a wide spectrum of cases, courts have also specifically done so in cases involving a challenge to the government's denial of identity documents to transgender people that match their gender identity. *See, e.g.*, *Foster v. Andersen*, No. 18-2552, 2019 WL 329548 (D. Kan. Jan. 25, 2019); *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020); *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Love v. Johnson*, 146 F. Supp. 3d 848 (E.D. Mich. 2015); *D.T. v. Christ*, 552 F. Supp. 3d 888 (D. Ariz. 2021); *Hersom v. Crouch*, No. 21-00450, 2022 WL 908503 (S.D.W. Va. Mar. 28, 2022); *Arroyo Gonzalez v. Rosello Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018). Plaintiffs are unaware of any federal court case refusing to grant a motion to proceed pseudonymously in the context at issue here.

true, but ultimately irrelevant, because there are well-established contexts in which courts have recognized that anonymity is nonetheless warranted. The Tenth Circuit has outlined at least three circumstances where anonymity is justified: (1) cases where the injury litigated against would be incurred as a result of disclosing plaintiff's identity, (2) cases involving matters of a highly sensitive and personal nature, and (3) cases involving a danger of physical harm. *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). While any one of these circumstances could independently justify anonymity in an appropriate case, all three are present here. Thus, if there were ever a situation where anonymity is appropriate, this case plainly presents it.[2]

### A.   Public Disclosure of C.R.'s Identity Would Exacerbate the Very Privacy Violations that Gave Rise to This Litigation and for Which Relief is Sought.

First, the preservation of privacy does not first require the sacrifice of privacy. The thrust of this litigation in large measure is to avoid the involuntary disclosure of one's transgender status in contexts where it would not otherwise occur. And not only is the disclosure of one's transgender status the very injury that this litigation seeks to avoid, but disclosure of one's transgender status is woven into the very claims at issue, including most notably Plaintiffs' informational privacy and compelled speech claims.

Adoption of Defendants' position with respect to the motion would undercut the ultimate relief that Plaintiffs seek before this litigation has even left the starting blocks. Even if C.R. prevails on the ultimate merits, he will have been deprived of the full relief to which he is entitled. Courts have refused to put litigants in what would be a paradoxical double-bind of

---

[2] Defendants assert that virtually every request to proceed pseudonymously has been denied in the Tenth Circuit; but they fail to cite a single case involving transgender status, and they cite only *appellate* cases reviewing denials, where the relevant standard of review (abuse of discretion) is vastly different than the standard applied by district courts in the first instance. And district courts in the circuit have, in fact, granted anonymity. *See, e.g.*, *Foster*, 2019 WL 329548, at *2.

needing to injure themselves further in order to cure the original injuries that they allege are unlawful and that prompted the litigation in the first place. *See* ECF No. 4 ("Mot.") (see cases cited). Defendants fail to respond entirely to this well-established ground justifying anonymity. On that basis alone, C.R.'s motion should be granted.

> **B.      This Case Revolves Around Matters of a Highly Sensitive and Personal Nature – C.R.'s Transgender Status and Related Medical Information.**

Second, the motion should also be granted in light of the deeply sensitive information that hangs in the balance: C.R.'s transgender status. As a threshold matter, Defendants dispute that there is any protectable privacy interest here. To be clear, while there is also a *constitutional* privacy right that has been violated in this case, as explained in Plaintiffs' response to Defendants' motion to dismiss, the question presented for purposes of this motion is even narrower: it simply concerns whether the case "involv[es] matters of a highly sensitive and personal nature." *Femedeer*, 227 F.3d at 1246. But even as to the constitutional issue, the Tenth Circuit has agreed with other courts: "'The excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate.'" *Anderson v. Blake*, 469 F.3d 910, 915 (10th Cir. 2006) (quoting *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999)).

Either way, the standard is abundantly satisfied here. A denial of C.R.'s motion to proceed pseudonymously would necessarily result in the public disclosure of highly sensitive and personal information, which is C.R.'s transgender status and related medical information. It is also not possible, of course, to present this case in a manner that does not put one's transgender status at issue: the entire purpose of this litigation is to challenge a policy that deprives transgender people of access to birth certificates matching their gender identity.

Defendants also attempt to downplay the sensitivity of the information at stake by

4

characterizing their Policy as merely disclosing any person's sex assigned at birth and arguing that there is no reasonable expectation of privacy in that information. But that is a straw man argument: it attempts to frame the information at too high a level of generality in order to obscure the actual disclosure relevant here, which is a person's transgender status.

Context matters in determining whether there is a reasonable expectation of privacy. *See, e.g.*, *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631 (10th Cir. 1988) (recognizing that a boundless inquiry into an employee's personal life was impermissible but suggesting that more carefully tailored questions relevant to employment might have been permissible). There is a world of difference between disclosing the birth-assigned sex of a transgender person as compared to a non-transgender person: the former disclosure reveals that the person is transgender; the latter disclosure does not. *Compare* ECF No. 25 (Opp.) at 9 (arguing that any information the government chooses to disclose on a driver's license can never be private) *with Love v. Johnson*, 146 F. Supp. 3d 848 (E.D. Mich. 2015) (recognizing privacy violations from disclosure of transgender status through assigned sex listed on driver's license). Likewise, there is far greater sensitivity in the fact that a transgender person has received a diagnosis of gender dysphoria than the fact that a non-transgender person has not received such a diagnosis. And in contrast to characteristics like height and eye color that are generally visible to others, the fact that a person is transgender is something that they may take great pains to avoid indiscriminately disclosing, particularly in contexts where their safety is in jeopardy, as discussed below.

Transgender status, which is itself highly sensitive, also implicates related medical information, which is also similarly sensitive in nature and thus deserving of privacy protection. Mot. 6; *see also Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (recognizing that medical records "are well within the ambit of materials entitled to privacy protection" because

5

they "may contain intimate facts of a personal nature") (quotes omitted); *see also Hardeman v. Smith*, 764 Fed. Appx. 658, 664 (10th Cir. 2019) (unpublished) (affirming an Oklahoma district court's decision to seal the medical records of a transgender litigant in accordance with Oklahoma privacy laws); *Grimes v. County of Cook*, 455 F. Supp. 3d 630, 638-39 (N.D. Ill. 2020) (determining a jail employee's transgender status was private medical information because it necessarily disclosed his gender dysphoria diagnosis and other medical interventions). To adequately litigate the merits of this case and vindicate the constitutional rights at stake, C.R.'s transgender status, as well as his medical diagnosis, medical care, and personal experiences of harm, were all necessarily disclosed as well. *See* ECF No.21, First Amended Compl. ("FAC") ¶¶ 104-122 (detailing C.R.'s gender dysphoria and corresponding medical treatment).

Last, to the extent that Defendants attempt to seek refuge in the fact that individuals themselves (rather than government officials) are generally the ones presenting their birth certificates to others, that argument fails for the reasons explained in Plaintiffs' response to Defendants' motion to dismiss. Even as to the ultimate constitutional question, a right to privacy "is not limited to the state's disclosure of personal information—it also includes a plaintiff's compelled disclosure of personal information." *Botello v. Morgan Hill Unified Sch. Dist.*, No. C09-02121 HRL, 2009 WL 3918930, at *4 (N.D. Cal. Nov. 18, 2009). Indeed, in many privacy cases, the initial disclosure triggering constitutional scrutiny is the coerced disclosure of information by the individual to others. *See, e.g.*, *NASA v. Nelson*, 562 U.S. 134, 138 (2011) (government required employee to disclose information).

The relief C.R. has sought is independently justified in light of the deeply sensitive and personal nature attendant to one's transgender status and related medical information.

    **C.**    **Indiscriminate Public Disclosure of C.R.'s Transgender Status Exposes Him to Danger of Physical Harm.**

Third, a real danger of physical harm also constitutes an "exceptional circumstance warranting some form of anonymity in judicial proceedings." *Femedeer*, 227 F.3d at 1246. Because of the real risks of discrimination, harassment, and violence transgender people face on account of their transgender status, courts regularly have allowed transgender plaintiffs to proceed under pseudonyms, including in matters analogous to this suit. *Supra* n.1. Involuntary disclosure of a person's transgender status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez*, 305 F. Supp. 3d at 333; *see also F.V.*, 286 F. Supp. 3d at 1137. As numerous courts have recognized, "[t]he hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n.8 (D.C. 2014); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017); *Love*, 146 F. Supp. 3d at 856; *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015). Of course, there is also no requirement that blood first be spilled before courts are willing take prophylactic action to protect an individual and prevent from any harm from materializing.

The threat of physical harm to transgender people due to the involuntary disclosure of their transgender status is real and concrete despite Defendants' contentions. C.R.'s motion provides ample support for his safety concerns, including data illustrating the staggering and omnipresent hostility that transgender people face. Mot. 7-9. The sheer prevalence and pervasiveness of these harms show why C.R.'s fears for his safety (like that of many other transgender people) are objectively reasonable, and they have likewise played out in his own life. FAC ¶¶ 116-120. Indeed, there also exist numerous documented instances where transgender people have been murdered in Oklahoma because they are transgender. *See, e.g.*, Muri Assunção, *Oklahoma Transgender Man Shot to Death While Driving His Cab on New Year's*

7

*Day; Survived by Wife, Four Children*, N.Y. Daily News, Jan 3, 2020, https://www.nydailynews.com/news/crime/ny-transgender-man-shot-to-death-driving-cab-oklahoma-20200103-ss23jcpaovdevlbovx2n72blwe-story.html; *Oklahoma Man Convicted of Killing Transgender Woman*, Okla. Fox 25, April 25, 2019, https://okcfox.com/news/local/oklahoma-man-convicted-of-killing-transgender-woman. In sum, C.R.'s fears that he faces an increased risk of discrimination, harassment, and even violence are eminently reasonable, particularly in light of the seriousness of the harms at issue.

**II.     Defendants' Claim of Waiver Is Meritless and Disregards the Scope of the Privacy Interest at Stake Here.**

As a last-ditch effort, Defendants argue that C.R. has somehow waived any interest in privacy simply because he complied with the relevant requirements in order to process his name change and because he dared to serve as a plaintiff in this litigation rather than simply letting others shoulder that burden. These arguments are wholly without merit.

As explained in the complaint, living in a manner consistent with one's gender identity is critical to the health and well-being of transgender people and a key aspect of treatment for gender dysphoria. FAC ¶ 29. Obtaining a name change can be a critical component of social transition, as it was for C.R., whose given name was traditionally female. *Id.* ¶ 109. As part of the legal process to obtain an order changing his name and recognizing his gender, individuals must demonstrate their entitlement to the relief sought, thus ensuring that it has not been sought for an improper purpose such as escaping creditors. None of that can be held against C.R. here. Indeed, by Defendants' reasoning, transgender people should never be allowed to proceed anonymously, contrary to the plethora of authority concluding otherwise, where they have undertaken similar routine steps to change their names in order to match their gender identity.

Defendants' argument also glosses over the enormous practical difference between a

garden-variety name change buried among a sea of similar requests and a federal lawsuit challenging a high-profile policy that a state governor has vowed to vindicate by "whatever action necessary." FAC ¶ 53. The attendant privacy interests are simply incomparable. These practical differences also make a legal difference, in terms of whether there is a privacy interest in the specific context where disclosure is threatened. *See, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989) (recognizing that the information on FBI rap sheets was not freely available, and could support a privacy interest, even though the underlying information could be discovered through a "diligent search of courthouse files"); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form.")

      C.R.'s interest in privacy here does not depend on whether he is open about his transgender status or not, either as a general matter or as to specific contexts in his life. As another court explained, "[t]he fact that Plaintiffs are proud of their transgender status and have shared such information on their personal social media accounts or with friends and family in no way negates their right to not be forced to disclose such private and personal information except on their own terms and in environments they chose." *Ray*, 507 F. Supp. 3d at 934. Thus, Defendants' attempts to parse through C.R.'s life to cherry pick the contexts where he has disclosed his transgender status are legally unavailing. None of that waives a person's right to control the precise circumstances in which their private information is disclosed, including whether, when, how, and to whom such information may be shared in particular settings. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 282-84 (4th Cir. 2010).

      Finally, it is no answer to suggest that C.R. should have simply sat on the sidelines and

9

instead let others carry the burden of vindicating the violation of individual constitutional rights. If everyone adopted Defendants' thinking, there would be no civil rights plaintiffs at all and no civil rights of which to speak. And if C.R.'s role in this litigation as fungible with the other Plaintiffs as Defendants claim, then the asserted burden on the government from the additional presence of a pseudonymous plaintiff in this litigation falls entirely by the wayside.

### III.  Permitting Plaintiff C.R. to Proceed Pseudonymously Promotes the Public Interest.

Last, courts also weigh the public interest in determining whether anonymity is warranted. *Femedeer*, 227 F.3d at 1246. Defendants fail to articulate any public interest in public disclosure of C.R.'s identity. In fact, the relief sought by C.R.'s motion *promotes* the public interest, because forcing individuals to disclose private information would deter them from seeking to vindicate their rights. *Doe v. Stand. Ins. Co.*, No. 1:15-CV-00105-GZS, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015). The decision to mount a federal challenge to a sitting governor alleging unconstitutional conduct targeting transgender people is not for the faint of heart. And it should not come with the additional cost of needless intrusions on privacy. While some individuals may be willing to bear the brunt of the backlash to their public participation in such an action, that is by no means a requirement. Particularly because the public will already have access to the filings, proceedings, and rulings in this action, C.R.'s request is narrowly tailored to prevent solely the disclosure of his identity that would expose him to harm.

### CONCLUSION

For the foregoing reasons, C.R. respectfully requests the Court grant his motion in full.

DATED:  September 30, 2022

Respectfully submitted,

/s/ Shelly L. Skeen
Shelly L. Skeen*
Nicholas Guillory*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3500 Oak Lawn Ave, Ste. 500
Dallas, TX 75219
Telephone: (214) 219-8585
Fax: (214) 481-9140
sskeen@lambdalegal.org
nguillory@lambdalegal.org

Peter C. Renn*
Christina S. Paek*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 Wilshire Boulevard, Ste. 280
Los Angeles, CA 90010
Telephone: (213) 382-7600
Fax: (213) 402-2537
prenn@lambdalegal.org
cpaek@lambdalegal.org

Karen Keith Wilkins, OBA# 21005
1515 S. Denver Ave.
Tulsa, OK 74119
Telephone: (918) 599-8118
Fax: (918) 599-8119
karen@wilkinslawtulsa.com

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on September 30, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to all ECF registrants, including Defendants Kevin Stitt, Keith Reed, and Kelly Baker.

                /s/ Shelly L. Skeen
                Shelly L. Skeen