UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROWAN FOWLER, *et al.*,

    *Plaintiffs,*

v.

KEVIN STITT, *et al.*

    *Defendants.*

No.   22-CV-00115-GKF-SH

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Submitted by:

ZACH WEST, OBA #30768
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov

BRYAN CLEVELAND, OBA #33860
  *Deputy Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Bryan.Cleveland@oag.ok.gov

AUDREY WEAVER, OBA #33258
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Audrey.Weaver@oag.ok.gov

**COUNSEL FOR DEFENDANTS**                                      **October 14, 2022**

The constitutional question before this Court has little to do with transgender status and everything to do with biological sex. The question is not whether the U.S. Constitution permits a state to discriminate against transgender individuals—the Oklahoma Birth Certificate Law does nothing of the sort. The question instead is whether the Constitution prohibits a state from recording sex on a birth certificate, as that term has been understood throughout our country's history. It does not. Plaintiffs' complaint boils down to arguing that accurate birth certificates, at their core, are unconstitutional.

Plaintiffs rarely address the arguments raised in Defendants' Motion to Dismiss head-on. Instead, Plaintiffs exaggerate the legal and factual realities of this dispute while constantly knocking down strawmen. In an attempt to make their claims appear stronger, Plaintiffs absurdly analogize the State's inclusion of (and refusal to alter) biological sex on a birth certificate to enforcing laws "excluding same-sex couples from marriage[,]" Doc. 33 at 8, engaging in "adverse action against transgender people[,]" *id.*, "insist[ing] that individuals match the sex stereotypes expected for them[,]" *id.* at 9, "firing an employee because she converts from Christianity to Judaism[,]" Doc. 33 at 10, "outing of a transgender person[,]" *id.* at 19 and "forc[ing] individuals to disclose unwanted facts . . . ." *Id.* at 25.

While distracted with these strawmen, Plaintiffs neglect the heavy burden they must overcome to state a plausible legal claim for invalidating the Birth Certificate Law under the U.S. Constitution. Plaintiffs must do more than allege a *disagreement* with the legislative choice to maintain (and refuse to alter) biological sex on state-issued birth certificates. *Compare* Doc. 33 at 2-3, 5-6, 8, 12-15, 22 *with* Doc. 24 at 5-7, 10, 15-17, 21. Plaintiffs must allege sufficient facts to establish the Constitution *forbids* the State from making a legislative choice to maintain biological sex on state-issued birth certificates.

Plaintiffs cannot overcome this burden as a matter of law because the Constitution does not protect an individual's right to compel the state to alter its own government-issued birth documents

1

so that individuals allegedly "injur[ed]" by their own biology can "access . . . birth certificates that match . . . gender identity[,]" Doc. 33 at 6, 3. The Constitution does not require a State to replace objective sex with subjective gender identity—especially not on its own government-issued records which function to report objective information *about birth*. Dismissal is proper.

I. **PLAINTIFFS CANNOT ESTABLISH THE BIRTH CERTIFICATE POLICY INTENTIONALLY DISCRIMINATES AS A MATTER OF LAW BY MERELY IDENTIFYING AN INDIVIDUAL'S SEX.**

According to Plaintiffs, any law even "referencing sex" "plainly creates a sex-based classification[,]" Doc. 33 at 5, and "discriminates on that basis." *Id.* at 6. Because the Birth Certificate Law allows the State to record an individual's sex on certificates of birth, Plaintiffs conclude the law discriminates based on sex. Plaintiffs don't attempt to reconcile this conclusion with the long-standing principle that mere "[c]lassification is not discrimination." Doc. 24 at 9 (quoting *Caskey Baking Co. v. Virginia*, 313 U.S. 117, 121 (1941)); *see also id.* at 13 ("The Equal Protection Clause does not forbid classifications.") (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Plaintiffs ignore these authorities. This Court, however, cannot. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990).[1]

Plaintiffs focus so heavily on an incorrect assumption that identifying an individual's sex *is* discrimination because the core theory undergirding their complaint is that sex does not really exist aside from gender identity and thus cannot be recorded. To be clear: Plaintiffs do not actually seek to "correct[]" inaccurate information contained on government records. Doc. 33 at 13 (complaining that registering "birth-assigned sex 'inaccurately describe[s] . . . the holder's lived gender expression of identity.'"). The Birth Certificate Law accurately registers biological sex—not subjective gender

---

[1] The fact that some cases casually refer to the class-based application of legal prohibitions or entitlements as a "classification" does not diminish this principle. *See, e.g., Virginia*, 518 U.S. at 546; *Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 289 (1978); *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792 (10th Cir. 2019). In each of these cases, the challenged policies did far more than merely identify individuals based on sex or race; rather, they tied benefits or exclusions to those classifications. In *Fort Collins*, for example, the "classification" was "gender-based" discrimination because it provided that men could go topless but women could not. 916 F.3d at 799. No such differential treatment is occurring here.

identity. *See* 63 O.S. § 1-321(H). Plaintiffs' complaint instead recasts biological sex as "assigned" sex, insinuating that determining biological sex at birth is some arbitrary exercise. *See* Doc. 21 at ¶¶ 69, 91, 106. Plaintiffs seek to force the State to replace its biological sex marker with subjective gender identity, but they cannot directly articulate their true claim because binding authority confirms that biological sex exists apart from gender identity.

Plaintiffs rely heavily on inapposite cases involving laws that went beyond merely identifying or classifying one's sex and race neutrally and instead tied certain benefits or exclusions to the classifications on an allegedly differential basis. *See, e.g.,* Doc. 33 at pp. 5-8 (citing *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); *Kadel v. Folwell*, No. 1:19CV272, 2022 WL 3226731 (M.D.N.C. Aug. 10, 2022); *Tudor v. SE Okla. State Univ.*, 13 F.4th 1019 (10th Cir. 2021); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020); and *Obergefell v. Hodges*, 576 U.S. 644 (2015)). Similarly, Plaintiffs frequently bypass independent constitutional analysis by touting a string-cite of district court opinions reaching their desired outcome on birth certificates. *See* Doc. 33 at p. 4-5, 7, 11, 12, 13, 17, 18. But this Court is not required to substitute its own reasoned judgment for that of another district court or even several district courts, any more than Oklahoma is required to substitute its legislative judgments for that of another state legislature.

Plaintiffs' faulty equation of neutral classification with invidious discrimination colors their misunderstanding of Defendants' equal protection arguments. For example, Plaintiffs characterize Defendants' equal protection argument as "foreclosed by *Bostock*[,]" despite the fact that Defendants *rely on Bostock*. *Compare* Doc. 33 at 7 *with* Doc. 24 at 11-12. *Bostock's* recognition that transgender status cannot happen without a divergence between gender identity and sex is precisely why Plaintiffs' invitation to erase biological sex altogether finds no support in the Equal Protection Clause. To give an example, discrimination against a transgender female for wearing a dress at work is only sex discrimination because the transgender female is a biological male, and the stereotype at issue is that

3

a male cannot wear a dress to work. There is no sex stereotype Defendants are aware of that says a female cannot wear a dress to work, and the entire theory of stereotypes in *Bostock* relies on the view that biological sex is immutable regardless of gender identity. Plaintiffs simply assume that recording sex on government records is just as invidious as intentionally treating "a person worse because sex—such as firing the person" for being transgender. *See Bostock*, 140 S. Ct. at 1740.

*Bostock* did not assume "without deciding" that biological sex exists. Doc. 33 at 6-7. Instead, *Bostock* observed that the term sex in a particular statute could refer "to biological distinctions between male and female" or it could potentially capture "a broader scope" under the term's original meaning. *Bostock*, 140 S. Ct. at 1739. Under *either* path, the Court's baseline acknowledgement that "biological distinctions between male and female" exist would stand. *Bostock*, in other words, did not overturn longstanding precedent that biological sex exists; instead, it assumed without deciding that Congress meant that statute to cover only biological sex in the workplace context. *See id.* The same ambiguity does not arise in Oklahoma's statutes because our Legislature has confirmed that the sex marker on birth certificates is a "biological sex designation[,]" 63 O.S. § 1-321(H), explicitly incorporating the "biological distinctions between male and female" that *Bostock* and other Supreme Court cases have recognized. In short, Plaintiffs' claims hinge on setting aside *Bostock* by denying the existence of objective biological sex. *See* Doc. 33 at 6 (claiming, preposterously, that "all scientific and medical understanding" indicates that sex and subjective gender identity are the same).

Plaintiffs also misunderstand Defendants' explanation of why the Birth Certificate Law is neutral on its face and in application. It is not neutral because "it treats everyone according to their birth-assigned sex[,]" Doc. 33 at 7, but because it does not "treat" anyone *any way*. *See* Doc. 24 at 7-8. It involves no adverse action, no deprivation of any benefit, and no differential treatment. It simply and permissibly records an objective fact on a government-issued document, and applies this standard equally to all persons regardless of sex, gender identity, etc. *See* Doc. 24 at 7-9. Again, Plaintiffs cannot

explain how the act of recording (and then refusing to alter) biological sex on a certificate of birth "requires everyone to live in a manner consistent with their birth-assigned sex . . . ." Doc. 33 at 8.

The absurdity of Plaintiffs' conflation of neutral classification and class-based discrimination is perhaps most obvious in their suggestion that the very act of recording biological sex *is somehow itself* "unabashedly rooted in sex stereotypes." Doc. 33 at 9. Supreme Court precedent forecloses this argument by finding "[p]hysical differences between men and women . . . are enduring: '[t]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both.'" Doc. 24 at 12 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Plaintiffs cannot escape this binding precedent by ignoring it or by trying to recast it as a disputable "matter of fact" to be debated later. Doc. 33 at 6. Indeed, Plaintiffs' remarkable admission that their "birth-assigned sex is an undeniable but-for cause of [their] injury" reveals that basic biology is the apparent root cause of Plaintiffs' grievances—not the Birth Certificate Law. *Id.* The Constitution does not prevent a State from recognizing biological realities on a state-issued birth certificate.

Despite failing to plausibly allege the Birth Certificate Law intentionally discriminates against any class of individuals in any form, Plaintiffs nonetheless insist heightened scrutiny is triggered because transgender individuals feel subjectively marginalized by the law. *See id.* at 4. To support their novel "indicia of suspect classification" argument (that collapses the discrimination and suspect class inquiries), Plaintiffs again ignore both the Tenth Circuit and the Supreme Court's refusals to recognize transgender status as a suspect class apart from sex. *Compare* Doc. 33 at 10 *with* Doc. 24 at 10. Rather than declaring transgender status a separate suspect class, despite being urged to, *Bostock* taught only that adverse employment action based on stereotypes about biological sex is sex-based discrimination. This holding is logically *impossible* if biological sex does not exist apart from gender identity. As the Tenth Circuit has acknowledged, there are "inherent physical differences" between sexes, and heightened scrutiny is only required when a policy "prescribes one rule for women . . . and a different

5

rule for men." *Free the Nipple v. City of Fort Collins, Colo.*, 916 F. 3d 792, 800-802. If a statute is "facially gender-neutral," as the birth certificate policy clearly is, then "[i]nvidiousness still matters" and needs to be analyzed at the threshold. *Id.* at 800; *see also SECSYS, LLC v. Vigil*, 666 F.3d 678, 687 (10th Cir. 2012). To recognize transgender status as a separate, suspect classification triggered by the mere inclusion of biological sex on a government record, without first finding intentional or invidious discrimination, would inevitably require all laws to deny the existence of biological sex.

Even intermediate scrutiny, however, would not save Plaintiffs' claims. Intermediate scrutiny does not allow courts "to substitute our judgment of what is desirable for that of Congress, or our own evaluation of evidence for a reasonable evaluation by the Legislative Branch." *Rostker v. Goldberg*, 453 U.S. 57, 68, (1981). And here, Plaintiffs' quibbles over the "inconsistency" between different public policy decisions adopted for birth certificates and driver's licenses only highlight the substantial government interest behind maintaining accurate birth certificates. *Cf.* Doc. 33 at 12-14; *see* Doc. 24 at 16. For example, although driver's licenses and birth certificates are government-issued records, a birth certificate registers facts *about birth* at the time of *birth*. A driver's license does not; it uses a current or near-current photo and related information to aid in the immediate recognition of the individual. The fact that an individual can change the sex marker on a driver's license illustrates the Birth Certificate Law is substantially related, even narrowly tailored, to the important government interests.

Plaintiffs' next attempt to save their equal protection claim transforms rational basis into something it is not. *Compare* Doc. 33 at 12-15 *with* Doc. 24 at 15-16. In *Dalton v. Reynolds*, cited by Plaintiffs for the proposition that rational basis review "is not toothless[,]" the state "offered no rational reason" for the challenged policy, and the Court could "think of none." 2 F.4th 1300, 1309 (10th Cir. 2021), *cert. denied, Reynolds v. Dalton*, 142 S. Ct. 348 (2021). Far from altering the rational basis standard, *Reynolds* confirms that so long as the state articulates a conceivable basis supporting the law,

6

the Court must uphold it.[2] Defendants identified several rational bases, and Plaintiffs' attacks go far beyond the deference that is owed under rational basis review. *See* Doc. 24 at 15-16. Deciding what types of information to register on a birth certificate, and whether to record biological sex or some other subjective metric, "is a matter of public policy" to be decided by the Oklahoma Legislature—not by Plaintiffs or this federal Court. *K. v. Health Div., Dep't of Hum. Res.*, 560 P.2d 1070, 1072 (Or. 1977); *see also In re Ladrach*, 513 N.E.2d 828, 832 (Oh. Prob. 1987); *Littleton v. Prange*, 9 S.W.3d 223, 231 (Tex.Civ.App. 1999); *In re Estate of Gardiner*, 42 P.3d 120, 136–37 (Kan. 2002).

In the end, Plaintiffs' claim that Oklahoma's Birth Certificate Law would not survive rational basis gives away the game: Plaintiffs believe *any* citation of or reliance on biological sex, as opposed to gender identity, is simply irrational when a state does it. Their view is by no means one the Constitution *requires* the State to accept. To be sure, Plaintiffs halfheartedly attempt to disavow this view, claiming that the "relief sought here does not require destroying of every record of birth-assigned sex nor all sex classifications." Doc. 33 at 8-9. But Plaintiffs fail to identify a *single* limiting principle under their theory—such as an instance where documenting biological sex would be constitutional. To the contrary, they rely substantially on cases like *Grimm* that enjoined a state from enforcing biological sex distinctions in regard to bathroom facilities and the like. *See, e.g.*, Doc. 33 at 8. And they elsewhere claim that the State's reliance on biological sex is a position "unabashedly rooted in sex stereotypes." Doc. 33 at 9-10. Their protestations to the contrary, Plaintiffs make perfectly clear their belief that any and all recognition of biological sex in the law is unconstitutional.

II. **THERE IS NO CONSTITUTIONAL RIGHT TO INFORMATIONAL PRIVACY IN BIOLOGICAL SEX.**

A party claiming a substantive due process violation must provide a "careful description" of the asserted liberty interest, because "vague generalities ... will not suffice." *Chavez v. Martinez*, 538 U.S.

---

[2] Plaintiffs cite no binding precedent whatsoever for their suggestion this Court can manufacture a "more searching rational basis review" on a whim. Doc. 33 at 12. This Court should reject Plaintiffs' invitation to create a novel standard of review that finds no support in this circuit.

760, 775–76 (2003) (*quoting Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Here, Plaintiffs employ vague generalities to describe the alleged liberty interest asserted: a "right 'to define and express their identity[,]'" "be treated consistent with their gender identity" or "live in accordance with one's gender identity . . . ." Doc. 33 at 20-21; *see also id.* at 12, 17. Plaintiffs never explain what, exactly, this liberty interest is supposed to guarantee,[3] or how the guarantee is deeply rooted in history and tradition or essential to the Nation's scheme of ordered liberty—as the U.S. Supreme Court has just insisted in *Dobbs* must be done. *Compare* Doc. 33 at 16-21 *with* Doc. 24 at 18-20. Nor do Plaintiffs explain how the Birth Certificate Law, which merely provides for the accurate reporting of sex on birth certificates, infringes upon the supposed right to express subjective gender identity. Plaintiffs nonetheless declare the State infringes upon this undefined liberty interest by refusing to alter the biological sex recorded on a government-issued certificate of birth to "match[] their gender identity . . . ." Doc. 33 at 12. Conclusory allegations are not enough to save Plaintiffs' claims from dismissal.

In addition, Plaintiffs' due process claims cannot succeed because an individual's "assigned sex at birth[,]" *i.e.* biological sex, is not "intensely private" or "excruciatingly private and intimate" information such that the mere inclusion of the same on a state-issued certificate of birth would infringe upon an individual's constitutional rights. Doc. 33 at 18. Plaintiffs make no attempt to justify this claim either. Plaintiffs instead focus their argument exclusively on "transgender status," which is not reported on a birth certificate and not at issue here. *See* Doc. 24 at 17-20. As with their equal protection argument, their due process argument only succeeds if objective biological sex does not exist and gender identity and sex collapse into the same category.

---

[3] Plaintiffs quote from dicta in *Obergefell v. Hodges* but omit crucial limiting language: "The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons, **within a lawful realm**, to define and express their identity." 576 U.S. 644, 651–52 (2015) (emphasis added). That "lawful realm" does not extend to forcing a state to erase biological sex in birth certificates.

Moreover, Plaintiffs only bolster Defendants' argument that inclusion of biological sex involves no government disclosure whatsoever by confirming the State only "provides people with copies of **their own** birth certificates . . . ." Doc. 33 at 16-17 (emphasis added). The State does not violate an individual's *constitutional rights* by maintaining (and refusing to amend) biological sex on a record registering facts of birth—no matter how much an individual dislikes this policy choice or believes that their "birth-assigned sex is an undeniable but-for cause of her injury." *Id.* at 6.

### III. A BIRTH CERTIFICATE IS NOT PRIVATE SPEECH, AND PLAINTIFFS CANNOT COMPEL THE STATE TO SPEAK A CERTAIN WAY IN ITS OWN RECORDS.

Plaintiffs' disagreement over the "purpose and utility of birth certificates" does not transform what is plainly government speech to private speech, nor does it establish that a birth certificate constitutes expressive conduct sufficient to invoke the First Amendment. Doc. 33 at 21. To survive dismissal, Plaintiffs must show the government-issued birth certificate is expressive conduct "to demonstrate that the First Amendment even applies." *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). "To hold otherwise would be to create a rule that all conduct is presumptively expressive." *Id.* But the Supreme Court has "decline[d] to deviate from the general rule that one seeking relief bears the burden of demonstrating that he is entitled to it." *Id.*

As the Wisconsin Supreme Court recently explained, in the driver's license context: "[t]he act of presenting identification . . . has never been considered a form of expressive conduct in either legal precedent or in the historical record[,]" and therefore "[t]he act of producing identification is conduct unprotected by the First Amendment." *Interest of C. G.*, 976 N.W.2d 318, 341 (Wis. 2022). In concluding the state's refusal to change a transgender woman's masculine name did not violate the First Amendment, the court noted:

> [t]he expressive component of her transgender identity is not created by the legal name printed on her identification but by the various actions she takes to present herself in a specific manner, e.g., dressing in women's clothing, wearing make-up, growing out her hair, and using a feminine alias.

9

*Id.* While presenting a driver's license with a masculine name "might cause the viewer to have doubts about whether Ella is biologically female, thereby inhibiting the success of her intended goal to be perceived as a woman[,]" that "insight does not stop Ella from expressing herself in whatever manner she chooses[,]" and therefore "does not render the production of identification expressive conduct . . . ." *Id.* at 341-42. For many of the same reasons, Plaintiffs here cannot establish a state-issued birth certificate is expressive conduct or speech sufficient to invoke the First Amendment.

As with their other claims, Plaintiffs' defense of their First Amendment claims again rests on the faulty assumption that biological sex is a fiction, not an objective reality. Plaintiffs make their arguments by assuming biology is a mere "ideological message" with which they can disagree. *See* Doc. 33 at 21. Therefore, in their view, the inclusion of biological sex on a government-issued birth certificate forces them "to express a viewpoint with which they disagree." *Id.* at 24. This Court should reject the absurd notion that biological sex is a debatable ideology—a position expressly foreclosed by Supreme Court precedent. Without this assumption, neither the First Amendment claim nor any of Plaintiffs claims can survive as a matter of law.

## **CONCLUSION**

The State's refusal to alter accurate factual information registered on a government-issued certificate of birth does not "strip[] transgender people of legal recognition of their identity." Doc. 33 at 1. Nor does it infringe upon any right guaranteed under the U.S. Constitution. The act of recording and maintaining accurate vital records does not discriminate, does not dictate individual behavior, does not deprive an individual of any benefit, does not disclose an individual's gender identity, does not require an individual conform to sex stereotypes, and does not convey any ideological message. It merely and simply records biological sex—an immutable characteristic. For these reasons, and those stated in Defendants' Motion to Dismiss, Doc. 24, dismissal is proper.

Respectfully submitted,

s/ *Audrey A. Weaver*
ZACH WEST, OBA #30768
 *Solicitor General*
BRYAN CLEVELAND, OBA #33860
 *Deputy Solicitor General*
AUDREY A. WEAVER, OBA #33258
 *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Zach.west@oag.ok.gov
Bryan.cleveland@oag.ok.gov
Audrey.weaver@oag.ok.gov
*Counsel for Defendants*

11

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

s/ *Audrey A. Weaver*  
Audrey A. Weaver